PARIENTE, J.
A nursing home patient, Harry Lee Stewart, signed an agreement providing for arbitration of disputes arising out of treatment and care at the nursing home. Stewart subsequently died, allegedly as a result of the nursing home’s negligence. Through the personal representative, Debra Laizure, his survivors brought a cause of action in circuit court for deprivation of rights under the applicable nursing home statute and, alternatively, a wrongful death action. The issue in this case presented through the Fifth District’s opinion in Laizure v. Avante at Leesburg, Inc., 44 So.3d 1254 (Fla. 5th DCA 2010), is whether an arbitration agreement signed by the decedent requires his estate and heirs to arbitrate their wrongful death claims. In its decision, the Fifth District Court of Appeal concluded that the estate and heirs were bound by the arbitration agreement signed by the patient, but certified the following question to be of great public importance:
DOES THE EXECUTION OF A NURSING HOME ARBITRATION AGREEMENT BY A PARTY WITH THE CAPACITY TO CONTRACT, BIND THE PATIENT’S ESTATE AND STATUTORY HEIRS IN A SUBSEQUENT WRONGFUL DEATH ACTION ARISING FROM AN ALLEGED TORT WITHIN THE SCOPE OF AN OTHERWISE VALID ARBITRATION AGREEMENT[?]
Id. at 1259. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
This case requires us to examine the nature of wrongful death actions under Florida law and is not about the quality of care provided by nursing homes or other related policy issues. The question presented is whether an arbitration provision in an otherwise valid contract binds the signing party’s estate and heirs in a subsequent wrongful death case. For the reasons more fully explained below, we hold that it does.[1] Our decision flows from the nature of wrongful death actions in Florida, which we conclude is derivative for purposes of the issue presented in this case. Because the signing party’s estate and heirs are bound by defenses that could be raised in a personal injury suit brought by the decedent, as well as by releases signed by the decedent, it would be anomalous to conclude that they are not also bound by a choice of forum agreement signed by the decedent in a wrongful death action arising out of the treatment and care of the decedent. Accordingly, we answer the certified question in the affirmative and approve the Fifth District’s decision.
FACTS AND BACKGROUND
Harry Lee Stewart died several days after he was admitted to Avante at Lees- *755 burg (AVL) in May 2006 for rehabilitation after surgery. Debra Laizure, as personal representative of Stewart’s estate, filed a complaint in circuit court seeking damages in excess of $15,000 against AVL, Avante Ancillary Services, Inc., and Avante Group, Inc. (together “Avante”). Laizure asserted against each of the defendants a claim for deprivation or infringement of Stewart’s statutory nursing home residents’ rights pursuant to the Florida Nursing Home Residents’ Rights Act (NHRRA), embodied in chapter 400, Florida Statutes (2008). Laizure pled in the alternative a claim against each of the defendants for wrongful death based on negligence.
The defendants filed a motion to compel arbitration predicated on an arbitration agreement that Stewart signed on May 15, the day after his admission to AVL. The arbitration agreement was presented to Stewart as part of a packet of admissions paperwork and was entitled “ADDENDUM TO ADMISSION AGREEMENT.” It provided in relevant part as follows:
The Facility and the Resident and/or Resident’s Authorized Representative (hereinafter referred to collectively as the “Parties”) understand and agree that any legal dispute, controversy, demand, or claim where the damages or other amount in controversy is/are alleged to exceed ten thousand dollars ($10,000.00), and that arises out of or relates to the Resident Admission Agreement or is in any way connected to the Resident’s stay at the Facility shall be resolved exclusively by binding Arbitration; and not by a lawsuit or resort to other court process. The parties understand that arbitration is a process in which a neutral third person or persons (“arbitrator(s)”) considers the facts and arguments presented by the parties and renders a binding decision.
This agreement to arbitrate shall include, but is not limited to, any claim based on ... breach of contract, breach of fiduciary duty, fraud or misrepresentation, common law or statutory negligence, gross negligence, malpractice or a claim based on any departure from accepted standards of medical or nursing care (collectively “Disputes”), where the damages or other amount in controversy is/are alleged to exceed ten thousand dollars ($10,000.00). This shall expressly include, without limitation, claims based on Chapter 400, Florida-Statutes, which allege damages in excess of ten thousand dollars ($10,000.00).
This agreement shall be binding upon, and shall include any claims brought by or against the Parties’ representatives, agents, heirs, assigns, employees, managers, directors, shareholders, management companies, parent companies, subsidiary companies or related or affiliated business entities.
[[Image here]]
THE PARTIES UNDERSTAND AND AGREE THAT BY ENTERING THIS ARBITRATION AGREEMENT THEY ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM OR DISPUTE THAT FALLS WITHIN THE SCOPE OF THIS AGREEMENT DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY. IN THE EVENT A COURT OF COMPETENT JURISDICTION SHALL RULE THAT A DISPUTE BETWEEN THE PARTIES IS NOT SUBJECT TO ARBITRATION THEN RESIDENT AND FACILITY ACKNOWLEDGE AND AGREE TO WAIVE ALL RIGHTS TO A TRIAL BY JURY AND TO HAVE THEIR DISPUTE DECIDED ONLY BY A JUDGE OF A COURT OF COMPETENT JURISDICTION IN THE COUNTY AND *756 STATE IN WHICH THE FACILITY IS LOCATED.
Finally, the Resident or his/her Authorized Representative understands that: (1) he/she has the right to seek legal counsel concerning this agreement; (2) he/she is not required to use the Facility for his/her healthcare needs and that there are numerous other health care providers in the State where Facility is located that are qualified to provide such care; and (8) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident or Authorized Representative within three (8) business days of signing the Agreement. If not rescinded within three (3) business days of signing, this Arbitration shall remain in effect for all care and services rendered at Facility subsequent to the date the agreement was signed, even if such care and services are rendered during a subsequent admission (i.e. following the Resident’s discharge from and readmission to the Facility).
Laizure opposed arbitration, contending that the arbitration agreement was procedurally and substantively unconscionable and that the wrongful death claims were not arbitrable. The trial court found that the arbitration agreement was valid, that the claims brought by Laizure were arbi-trable issues, and that the beneficiaries of the estate were intended third-party beneficiaries of the agreement.
On appeal, the Fifth District affirmed the trial court’s order. The Fifth District focused primarily on Laizure’s argument that the arbitration agreement did not, and could not, encompass a wrongful death claim because the claim did not belong to Stewart, but rather was an independent claim belonging to the estate and the statutory heirs. Laizure, 44 So.3d at 1257. The Fifth District observed that no Florida decision appears to have directly addressed the issue of whether a nursing home arbitration agreement executed by a patient is binding on his estate and heirs in a wrongful death action. Id.
The Fifth District began its discussion by reviewing this Court’s decision in Seifert v. U.S. Home Corp., 750 So.2d 633, 635 (Fla.1999), in which the Court held that a wrongful death claim was not arbitrable where the arbitration agreement contained in a homebuyer’s purchase and sale contract did not require the arbitration of personal injury tort claims. Laizure, 44 So.3d at 1257-58. The Fifth District recognized, however, that this Court “did not hold that wrongful death claims are not arbitrable. Rather, it concluded that an arbitration provision in a homebuyer’s contract, which did not refer to tort claims for personal injuries, did not require arbitration of such disputes.” Id. at 1258.
Turning to this case, the Fifth District contrasted the arbitration agreement at issue here with the agreement in Seifert, stating that the arbitration agreement signed by Stewart was “broad, encompassing ‘any claim based on ... common law or statutory negligence, gross negligence, malpractice or a claim based on any departure from accepted standards of medical or nursing care.’ ” Id. Because the wrongful death claim was based on alleged negligence, the Fifth District concluded that it fell “squarely within the language of the arbitration agreement.” Id.
The Fifth District next addressed Lai-zure’s argument that the very nature of a wrongful death cause of action places it outside the terms of the arbitration agreement. Id. The Fifth District disagreed, reasoning:
While we agree that a wrongful death action belongs to the survivors of the decedent, by statute, such an action is predicated on the “wrongful act, negli *757 gence, default or breach of contract or warranty” committed by the defendant which, as the result of the decedent’s death, transformed a personal injury claim into one for wrongful death. See § 768.19, Fla. Stat. (2009). Consequently, courts generally agree that wrongful death claims are derivative in nature, at least in the sense that they are dependent on a wrong committed against the decedent. Valiant Ins. Co. v. Webster, 567 So.2d 408, 411 (Fla.1990).... The connection to the underlying tort also permits defenses that would have been available to a defendant had the decedent lived, to be equally available to a defendant in a wrongful death action. See generally Thomas D. Sawaya, Fla. Personal Injury Law & Practice with Wrongful Death Actions, §§ 22.l-.il (2008-2009 ed.).
Id. The Fifth District noted that the conclusion that a wrongful death claim is within the scope of an arbitration agreement was at least “inferentially supported by” a case in which the Fourth District enforced a nursing home arbitration agreement in a wrongful death action. Id. at 1258 (citing Consol. Res. Healthcare Fund I, Ltd. v. Fenelus, 853 So.2d 500 (Fla. 4th DCA 2003)). The Fifth District observed that other jurisdictions have reached the same result. Id. at 1259 (citing In re Labatt Food Serv., L.P., 279 S.W.3d 640 (Tex.2009); Trinity Mission Health & Rehab. of Clinton v. Estate of Scott ex rel. Johnson, 19 So.3d 735 (Miss.Ct.App.2008); Briarcliff Nursing Home, Inc. v. Turcotte, 894 So.2d 661 (Ala.2004); Herbert v. Superior Court, 169 Cal.App.3d 718, 215 Cal.Rptr. 477 (1985); Ballard v. Sw. Detroit Hosp., 119 Mich.App. 814, 327 N.W.2d 370 (1982)).
After analyzing this issue, the Fifth District certified to this Court the question of whether a nursing home arbitration agreement signed by a nursing home resident, or his or her representative, binds the resident’s estate and statutory heirs to arbitration in a subsequent wrongful death action arising from an alleged tort within the scope of an otherwise valid arbitration agreement. Id.
ANALYSIS
In Florida, “there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.” Seifert, 750 So.2d at 636. The certified question in this case — whether the arbitration agreement requires arbitration of the wrongful death claims brought by Laizure on behalf of Stewart’s estate and heirs— relates to the first two elements. See id. The question presented is a pure question of law, and this Court’s review is de novo. See Sanders v. State, 35 So.3d 864, 868 (Fla.2010) (“Pure questions of law are subject to de novo review.”).
We begin our analysis by addressing Laizure’s argument that the wrongful death claims are not within the scope of the arbitration agreement. Then, we analyze the issue of whether a nursing home arbitration agreement signed by a nursing home resident, or his or her representative, can bind the resident’s estate and statutory heirs to arbitration. To analyze this issue, we first review Florida’s Wrongful Death Act. Next we discuss the Florida Nursing Home Residents’ Rights Act (NHRRA). Finally, we analyze the nature of wrongful death claims in Florida and answer the certified question in the affirmative.
I. The Scope of the Arbitration Agreement
There is no question that the wrongful death claims under chapter 400 *758 of the Florida Statutes fall within the language of the arbitration agreement in this case. In Seifert v. U.S. Home Corp., 750 So.2d 633, 640-42 (Fla.1999), this Court held that an arbitration provision in a sales agreement for a home did not require arbitration of a wrongful death claim based on negligence where the contract did not mention any of the parties’ rights in the event of personal injuries or death but rather referred only to the sale and purchase of the home and the tort action did not bear a significant relationship to the contract. Here, unlike, the contract and claim in Seifert, there is a “significant relationship,” id., between the contract and the allegations in the complaint. Further, unlike Seifert, the terms of the arbitration agreement in this case specifically “contemplated the existence and arbitration of future tort claims for personal injuries based on a party’s common law negligence.” Id. The agreement expressly encompasses claims arising out of or relating to Stewart’s stay at the facility, including negligence and malpractice, and is expressly binding upon and includes claims brought by Stewart’s “heirs.” As reflected in the terms of the arbitration agreement, it is clear that the contracting parties intended to include wrongful death claims such as those brought in this case.
Laizure nevertheless contends that the wrongful death claims are not arbitrable because a wrongful death claim is an independent cause of action belonging to the survivors under Florida’s Wrongful Death Act. We now turn to an examination of the Act.
II. Florida’s Wrongful Death Act
“A court’s purpose in construing a statute is to give effect to legislative intent, which is the polestar that guides the court in statutory construction.” Gomez v. Vill. of Pinecrest, 41 So.3d 180, 185 (Fla.2010). The Legislature has expressly provided in the wrongful death statute that it is “the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer.” § 768.17, Fla. Stat. (2008). Sections 768.16-26, Florida Statutes, known as the “Florida Wrongful Death Act,” are remedial and are to be liberally construed. § 768.17, Fla. Stat.
The Act provides for a cause of action that may be brought by a decedent’s personal representative when the decedent’s death is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person:
When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony.
§ 768.19, Fla. Stat. (2008) (emphasis added). The next section further provides:
The action shall be brought by the decedent’s personal representative, who shall recover for the benefit of the decedent’s survivors and estate all damages, as specified in this act, caused by the injury resulting in death. When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate.... A defense that would bar or reduce a survivor’s recovery if she or he were the plaintiff may be asserted against the *759 survivor, but shall not affect the recovery of any other survivor.
§ 768.20, Fla. Stat. (2008). The Act also provides for damages that may be recovered by the survivors, see § 768.21, Fla. Stat. (2008), and requires that “[t]he amounts awarded to each survivor and to the estate shall be stated separately in the verdict.” § 768.22, Fla. Stat. (2008).
Because this case also involves the Florida Nursing Home Residents’ Rights Act, we briefly discuss that statutory scheme next.
III. Florida Nursing Home Residents’ Rights Act
The purpose of the NHRRA is to provide for the “development, establishment, and enforcement of basic standards for: (1) the health, care, and treatment of persons in nursing homes and related health care facilities; and (2) the maintenance and operation of such institutions that will ensure safe, adequate, and appropriate care, treatment, and health of persons in such facilities.” § 400.011, Fla. Stat. (2008). The NHRRA sets forth the statutory rights of nursing home residents. § 400.022, Fla. Stat. (2008). The NHRRA includes a provision for civil enforcement that provides for a cause of action for negligence or a violation of the rights set forth in section 400.022. § 400.023, Fla. Stat. (2008). The action may be brought by the resident or his or her guardian, by a person or organization acting on behalf of a resident, or by the personal representative of the estate of a deceased resident regardless of the cause of death. Id. The NHRRA provides that the action may be brought in any court of competent jurisdiction and that the claimant may recover actual and punitive damages. Id.
If the action alleges that negligence or a violation of the resident’s rights caused the resident’s death, the claimant is “required to elect either survival damages pursuant to s. 46.021 or wrongful death damages pursuant to s. 768.21.” Id.[2] Section 46.021 provides that “[n]o cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law.” § 46.021, Fla. Stat. (2008). Section 768.21 is part of Florida’s Wrongful Death Act and provides for the damages that may be claimed by the decedent’s estate and statutory heirs. § 768.21, Fla. Stat. (2008).
The ability of a claimant to elect between a survival action and a wrongful death action emanates from the NHRRA. When the NHRRA does not apply, the personal injury cause of action abates upon the death of the injured party under the Wrongful Death Act, and the wrongful death cause of action becomes the only avenue for recovery. See § 768.20, Fla. Stat. (2008) (“When a personal injury to the decedent results in death, no action for the personal injury shall survive....”).
IV. Answering the Certified Question
Although Florida’s Wrongful Death Act has “long [been] characterized ... as creating a new and distinct right of action from the right of action the decedent had prior to death,” Toombs v. Alamo Rent-A-Car, Inc., 833 So.2d 109, 111 (Fla.2002), courts have also characterized wrongful *760 death actions as derivative because they are dependent on a wrong committed against the decedent. This Court has explained that “[w]hile the Wrongful Death Act creates independent claims for the survivors, these claims are also derivative in the sense that they are dependent upon a wrong committed upon another person. No Florida decision has allowed a survivor to recover under the wrongful death statute where the decedent could not have recovered.” Valiant Ins. Co. v. Webster, 567 So.2d 408, 411 (Fla.1990), receded from on other grounds by Gov’t Employees Ins. Co. v. Douglas, 654 So.2d 118, 119-20 (Fla.1995).
The right of the survivors to recover is predicated in the Act on the decedent’s right to recover. In other words, recovery is precluded if the decedent could not have maintained an action and recovered damages if death had not ensued. Section 768.19, Florida Statutes (2008), provides for a cause of action “[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, ... and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued.” (Emphasis added.) In Variety Children’s Hospital v. Perkins, 445 So.2d 1010, 1011-12 (Fla.1983), this Court held that a wrongful death action was barred where the decedent, during his lifetime, had filed a personal injury action and had fully recovered, because “[a]t the moment of his death [the injured party] had no right of action against the tortfeasor because his cause of action had already been litigated, proved and satisfied.... Since there was no right of action existing at the time of death, under the statute no wrongful death cause of action survived the decedent.”
More recently, in Toombs, this Court barred recovery for a wrongful death claim predicated upon the dangerous instrumentality doctrine where the decedent had no right of action because she was a co-bailee of the vehicle. 833 So.2d at 118. This Court held that “no right of action originated in the decedent to which a wrongful death cause of action could attach” and concluded as follows:
Although we have long emphasized that an action for wrongful death is distinct from the decedent’s action for personal injuries had he or she survived because it involves different rights of recovery and damages, the language of the Act makes clear a cause of action for wrongful death that is predicated on the decedent’s entitlement to “maintain an action and recover damages if death had not ensued.” See Valiant Ins. Co. v. Webster, 567 So.2d 408, 411 (Fla.1990) (“While the Wrongful Death Act creates independent claims for the survivors, these claims are also derivative in the sense that they are dependent upon a wrong committed upon another person.”); Celotex Corp. v. Meehan, 523 So.2d 141, 147 (Fla.1988) (“[A] wrongful death action is derivative of the injured person’s right, while living, to. recover for personal injury.”). Accordingly, ... we hold that no cause of action for wrongful death survived the decedent in the instant case because she had no right of action at her death.
Id. at 118. Similarly, Florida cases have held that a general release executed by the decedent in resolution of a personal injury action bars any subsequent wrongful death action. See Warren v. Cohen, 363 So.2d 129, 131 (Fla. 3d DCA 1978) (holding that “the subsequently filed wrongful death action is barred by the release signed by the decedent prior to her death”); see also Ryter v. Brennan, 291 So.2d 55, 57 (Fla. 1st DCA 1974) (settlement and general release by decedent barred wife’s subsequent wrongful death claims).
*761 The above cases illustrate that in wrongful death actions in Florida, the defendant’s liability flows from actions toward the decedent, and the ability of the estate and heirs to recover is predicated on the decedent’s entitlement to maintain an action and recover damages if death had not ensued. As the Fifth District observed in this case:
While we agree that a wrongful death action belongs to the survivors of the decedent, by statute, such an action is predicated on the “wrongful act, negligence, default or breach of contract or warranty” committed by the defendant which, as the result of the decedent’s death, transformed a personal injury claim into one for wrongful death. See § 768.19, Fla. Stat. (2009). Consequently, courts generally agree that wrongful death claims are derivative in nature, at least in the sense that they are dependent on a wrong committed against the decedent.
Laizure, 44 So.3d at 1258 (emphasis added).
We acknowledge that courts in other states are split when considering the question of whether the estate and heirs are bound by an arbitration agreement signed by the decedent, even in states with provisions similar to Florida that predicate a wrongful death claim on the ability of the decedent to have brought suit and recover damages had he or she lived.[3] We also acknowledge that the measure of damages for a wrongful death cause of action under Florida law is different than for a personal *762 injury claim that could have been brought by the decedent.
Principled arguments exist on both sides of this issue. However, we ultimately conclude that the nature of a wrongful death cause of action in Florida is derivative in the context of determining whether a decedent’s estate and heirs are bound by the decedent’s agreement to arbitrate. The estate and heirs stand in the shoes of the decedent for purposes of whether the defendant is liable and are bound by the decedent’s actions and contracts with respect to defenses and releases. See § 768.19, Fla. Stat. (2008) (requiring for a wrongful death cause of action that “the event would have entitled the person injured to maintain an action and recover damages if death had not ensued”); see also Toombs, 833 So.2d at 118; Variety Children’s Hosp., 445 So.2d at 1012. For example, if a decedent signs a release of liability in resolution of a personal injury action, the estate and heirs would be precluded from bringing a wrongful death cause of action based on the same conduct. We see no reason that a different result is compelled for the decedent’s choice of forum, and it would be anomalous to give greater rights to the estate and heirs than to the decedent. Finally, we note that holding otherwise in the nursing home context would give the personal representative of an estate the strategic choice under the NHRRA, section 400.023, to elect to pursue a wrongful death claim, rather than a survivor action on behalf of the decedent, simply to avoid arbitration that was agreed to by the decedent.
In sum, the wrongful death claims in this case are clearly within the scope of the arbitration agreement. With respect to whether they are arbitrable, we conclude that the estate and statutory heirs are bound by the arbitration agreement to the same extent that Stewart would have been bound. Therefore, they are required to arbitrate their wrongful death claims under the arbitration agreement signed by Stewart.
CONCLUSION
For the foregoing reasons, we answer the certified question in the affirmative and hold that the execution of a nursing home arbitration agreement by a party with the capacity to contract binds the decedent’s estate and statutory heirs in a subsequent wrongful death action arising from an alleged tort within the scope of an otherwise valid arbitration agreement. Accordingly, we approve the Fifth District’s decision.
It is so ordered.
POLSTON, C.J., and LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. Laizure also argues that the arbitration agreement in this case is unconscionable, and the Respondents argue that the arbitration agreement binds the estate and statutory heirs because they are third-party beneficiaries to the agreement. We decline to address both of these arguments because they are outside the scope of, and unrelated to, the certified question before this Court. See Major League Baseball v. Morsani, 790 So.2d 1071, 1080 n. 26 (Fla.2001) (declining to address a claim “because it is outside the scope of the certified question”); State v. Perry, 687 So.2d 831, 831 (Fla.1997) ("We decline to review the second cross-appeal issue raised by respondent because the issue is unrelated to the certified question upon which this Court's jurisdiction is based.”).

. This provision was added in 2001. See ch.2001-45, Laws of Fla. At the same time, the Legislature amended section 400.023 to provide that "[s]ections 400.023-400.0238 provide the exclusive remedy for a cause of action for recovery of damages for the personal injury or death of a nursing home resident arising out of negligence or a violation of rights specified in s. 400.022. This section does not preclude theories of recovery not arising out of negligence or s. 400.022 which are available to a resident or to the agency.” Ch.2001-45, Laws of Fla. (emphasis added).

. Compare Ruiz v. Podolsky, 50 Cal.4th 838, 114 Cal.Rptr.3d 263, 237 P.3d 584, 593 (2010) (stating with respect to medical malpractice cases that “the purpose behind the wrongful death statute, section 377.60, would not be undermined by construing section 1295[, which contemplates that all medical malpractice claims, including wrongful death claims, may be subject to arbitration agreements,] to permit the binding of wrongful death litigants to arbitration. Although a wrongful death claim is an independent action, wrongful death plaintiffs may be bound by agreements entered into by decedent that limits the scope of the wrongful death action.’’); In re Labatt Food Serv., L.P., 279 S.W.3d at 644 ("[Statutory wrongful death beneficiaries’ claims place them in the exact ‘legal shoes' of the decedent, and they are subject to the same defenses to which the decedent's claims would have been subject.’’); Cleveland v. Mann, 942 So.2d 108, 118-19 (Miss.2006) ("[A] wrongful death beneficiary is only allowed to bring claims that the decedent could have brought if the decedent had survived.... Because Mann agreed to arbitrate, he could not have brought this claim ... even if death had not ensued. He would have been required to submit his claim to arbitration. Therefore, since Mann could not have brought this claim, neither can plaintiffs.”); Briarcliff Nursing Home, Inc., 894 So.2d at 664 (holding that the executor or administrator of the estate is bound by the arbitration provision entered into by the decedent); Allen v. Pacheco, 71 P.3d 375, 379 (Colo.2003) ("Because the plain language of the agreement in this case refers to ‘all claims’ including those brought for ‘death,’ and because we must apply a strong presumption in favor of arbitration, we find that the arbitration agreement applies to wrongful death claims.”); Ballard, 327 N.W.2d at 371 (”[T]he wrongful death act establishes a cause of action where the defendant's negligence or wrongful act would 'if death had not ensued, have entitled the party injured to maintain an action and recover damages’. Therefore, the action brought by the personal representative is a derivative one, and the representative in effect stands in the shoes of the decedent.” (citation omitted)); with Woodall v. Avalon Care Center-Fed. Way, LLC, 155 Wash.App. 919, 231 P.3d 1252, 1258 (2010) ("The wrongful death statutes ‘create new causes of action’ meant to compensate surviving relatives ‘for losses caused to them by the decedent's death.’ No benefits of a wrongful death claim flow to the estate. Nor did the cause of action ever belong to the decedent- '[T]he action for wrongful, death is derivative only in the sense that it derives from the wrongful act causing the death, rather than from the person of the deceased.'....”); Lawrence v. Beverly Manor, 273 S.W.3d 525, 529 (Mo.2009) ("A claim for wrongful death is not *762 derivative from any claims [the decedent] might have had, and the damages are not awarded to the wrongful death plaintiffs on [the decedent’s] behalf. The arbitration agreement, therefore, cannot bind parties to the wrongful death suit.”); Bybee v. Abdulla, 189 P.3d 40, 46 (Utah 2008) (“Utah has uniformly held that a wrongful death cause of action, while derivative in the sense that it will not lie without a viable underlying personal injury claim, is a separate claim that comes into existence upon the death of the injured person. The independent nature of the wrongful death cause of action ... means that ... the heirs in a wrongful death action stand in, at most, one shoe of the decedent." (citations omitted)); Peters v. Columbus Steel Castings Co., 115 Ohio St.3d 134, 873 N.E.2d 1258, 1262 (2007) (“[The decedent] could not restrict his beneficiaries to arbitration of their wrongful-death claims, because he held no right to those claims; they accrued independently to his beneficiaries for the injuries they personally suffered as a result of the death.”).