# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D2021-3296
_____

JODY MEYER,

Appellant,

v.

U-HAUL CO OF FLORIDA, and
CINDY PRONTO,

Appellees.

_____


On appeal from the Circuit Court for Alachua County.
Monica J. Brasington, Judge.


September 4, 2024

PER CURIAM.

AFFIRMED.

M.K. THOMAS and LONG, JJ., concur; TANENBAUM, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

TANENBAUM, J., dissenting.

In this appeal, the court reviews a non-final order compelling Jody Meyer to arbitrate his slip-and-fall suit against U-Haul Company of Florida and one of its location managers (collectively referred to as "U-Haul"). Embedded in a standard storage-unit lease, the parties' arbitration agreement is broad, defining a "claim" to include "all legal theories," such as "all statutory and tort claims," but at the same time limiting claims subject to arbitration to those "arising out of or relating to," or "relating in any way to" the parties' rental agreement itself, the transaction it reflects, and performance under the agreement, thereby making it coextensive with the reach of federal policy requiring enforceability of arbitration agreements of "rental" dealings. Meyer's suit, however, does not rely on any terms of the lease or the dealings that led to the lease, pursuing damages based on a breached duty of care owed the public at large, never even mentioning the rental agreement. It was error for the trial court to have forced Meyer out of court and away from his constitutional right to a jury trial on his suit based on the arbitration agreement, there being no nexus between his theory of liability and the storage-unit rental reflected in the lease, a required element under federal policy favoring enforceability of arbitration agreements. We should be vacating the trial court's arbitration order, not affirming it.

I

A

The "UHaul Self Storage Rental Agreement" executed by Meyer entitled him to usage of a "10x25x9" space in return for $158.39 in monthly rent. The contract was just over four pages long. The second page notified Meyer that "Protecting your property in storage is your responsibility," making clear that U-Haul would not be liable for "any loss or damage that occurs to my goods while in storage." The third page had lots of details about Meyer's obligations as a tenant: pay the rent on time; financial consequences if he fails to; and obey whatever policies, procedures, and restrictions that U-Haul imposes regarding access to his assigned room. Highlighted twice on this page was U-Haul's renunciation of any responsibility for loss or damage to Meyer's

2

property stored on the premises, even expressly stating that it was "not a bailee of [Meyer's] property." Indeed, U-Haul took on no duties or responsibilities at all in the contract, promising only to allow Meyer "access to the rental space [] for the purpose of storing and removing property stored in that rental space" but foreclosing use of the space for "residential purposes or operation of a business."

At the top of the fourth page, U-Haul once again reminded Meyer that it took no responsibility for his property: If he were to ask U-Haul to accept, on his behalf, "articles delivered for [him] within [his] leased space or other area designated by [U-Haul]," U-Haul would "not be liable for whatever reason including negligence, for any article delivered . . . that is lost, stolen, misplaced, damaged or destroyed."

The remainder of the document set out the "U-Haul Arbitration Agreement." The key provision stated as follows:

> You and U-Haul agree that any and all Claims ("Claims" as defined below) between You and U-Haul *relating in any way to your rental or purchase from U-Haul* shall be submitted to binding Arbitration before the American Arbitration Association ("AAA") in accordance with the AAA Commercial Arbitration Rules and Supplementary Procedures for Consumer-Related Disputes ("AAA Rules"), and judgment may be entered on the Arbitration award by a Court of competent jurisdiction.

(emphasis supplied). The arbitration agreement then defined the term "Claims"

> broadly [] to include any dispute, Claim or cause of action *arising out of or relating to, Your dealings with U-Haul*, including but not limited to, the reservation and/or reservation process, use of any affiliated U-Haul website, advertising, rental or sales contract, or Equipment. Claim includes any and all legal theories, including but not limited to, all statutory and tort claims, that may be asserted by You.

(emphasis supplied).

3

## B

About four months after executing the rental contract, Meyer allegedly slipped and fell on construction dust while walking to his unit at the U-Haul facility, suffering bodily injury as a result. In his complaint for damages, Meyer alleged that U-Haul and Cindy Proto (a location manager) were negligent, purportedly by failing to clear the dust and failing to warn of its presence, making them liable for his resulting injury. The complaint did not rely on or mention the rental contract as creating a special responsibility owed to Meyer, referencing instead U-Haul's and Proto's "ow[ing] its invitees [as members of "the general public"] a duty to exercise reasonable care for their safety." Meyer requested damages and costs and demanded a jury trial.

U-Haul and Proto moved to abate the suit and compel arbitration, asserting Meyer's suit fell within the rental contract's arbitration provision. Following a hearing, the trial court issued the order compelling arbitration, keying on the arbitration agreement's "express reference to 'tort claims,'" a feature absent in the seminal case *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999), leading the trial court to conclude the arbitration provision "expressly and unambiguously" applies to mandate arbitration of Meyer's personal injury claim, but without explaining how it determined there was a "sufficient nexus" between that claim and the rental contract. That order now is with us on direct review. *See* Fla. R. App. P. 9.130(a)(3)(I). Indeed, no nexus does exist, despite one still being required to some substantive degree even for arbitration agreements expressly covering torts. That analysis is where I turn next.

## II

## A

National public policy, reflected in the Federal Arbitration Act ("FAA"), favors enforcement of arbitration agreements. *See* 9 U.S.C. § 2 (requiring an arbitration provision in a contract involving commerce to be treated as "valid, irrevocable, and enforceable"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) (explaining that the FAA declares "a liberal federal policy favoring arbitration agreements,

4

notwithstanding any state substantive or procedural policies to the contrary" and creates "federal substantive law of arbitrability"); *see also Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) ("Today, arbitration provisions are common, and their use generally favored by the courts."). The intent behind this law, "applicable in state as well as federal courts," is "to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984); *see Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–11 (1974) (characterizing the FAA as "reversing centuries of judicial hostility to arbitration agreements"); *id.* at 510 n.4 (noting how "English courts traditionally considered irrevocable arbitration agreements as 'ousting' the courts of jurisdiction, and refused to enforce such agreements for this reason," a view "adopted by American courts as part of the common law up to the time of the adoption of the" FAA); *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 461–62 (Fla. 2011) (noting how the FAA "was intended to reverse the longstanding judicial hostility toward arbitration that had existed at English common law and that had been imported by American courts").

Still, arbitration agreements are contracts, construed by courts as such. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (observing that "arbitration is a matter of contract" (internal quotation and citation omitted)); *Seifert*, 750 So. 2d at 636 (explaining that "because arbitration provisions are contractual in nature, construction of such provisions and the contracts in which they appear remains a matter of contract interpretation"). The FAA simply "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). In practical terms, courts may construe arbitration agreements in accordance with state contract jurisprudence of *general* applicability; they may not apply a "state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). That is, "[a] court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Id.*; *see Dr.'s Assocs., Inc. v.*

*Casarotto*, 517 U.S. 681, 686–87 (1996) ("Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions.").

This appeal, though, is not about ensuring an arbitration provision receives the proper, "equal footing" treatment. We should look here to determine, not *whether* Meyer and U-Haul have a valid arbitration agreement, but *what* they agreed to arbitrate, remembering that "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation and citations omitted); *see Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties."). "A natural corollary of this rule is that no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *Seifert*, 750 So. 2d at 636; *cf. Granite Rock Co.*, 561 U.S. at 303 (explaining that "the presumption favoring arbitration . . . derives its legitimacy from[] a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement . . . is legally enforceable and best construed to encompass the dispute").

The court should be careful here. Forcing Meyer to arbitrate his tort claim outside a court, against the parties' contractual intent, would be to deprive Meyer of his "rights to a trial by jury, due process and access to the courts." *Seifert*, 750 So. 2d at 642; *cf. Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 398 (Fla. 2005) (treating an arbitration agreement as a contractual relinquishment of "the rights of access to courts and trial by jury"); *see* Art. I, § 21, Fla. Const. (guaranteeing access to Florida's courts for "redress of any injury"); Art. I, § 22, Fla. Const. (guaranteeing that the right to a jury trial "remain[s] inviolate").[1] Yet, as we

---

[1] As with a plea agreement in a criminal proceeding, an arbitration agreement constitutes a waiver of the constitutional right to a jury trial. In a civil case, a party may waive his or her constitutional right to a jury trial, and that waiver may be express or implied. *In re Shambow's Est.*, 15 So. 2d 837, 837 (Fla. 1943).

6

"apply[] general state-law principles of contract interpretation," here, and put the arbitration provision on "equal footing" with any other contract, we apparently still must give "due regard . . . to the federal policy favoring arbitration," resolving "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989) (internal citation omitted); *see Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . .").

Now, this principle is fine, as far as it goes. Recall that I am talking about a federal law, Congress having enacted the FAA pursuant to the enumerated power "[t]o regulate Commerce . . . among the several States." Art. I, § 8, U.S. CONST. The FAA naturally tracks that power, requiring for its applicability that the contract containing the arbitration provision "evidenc[e] a transaction involving commerce" among the States, territories, or foreign nations. 9 U.S.C. § 2; *see also* 9 U.S.C. § 1 (defining "commerce"). The FAA's arbitrability provision keys off that transaction and the contract reflecting it, extending the national arbitration policy only to controversies "arising out of" the following: the contract of which the arbitration provision at issue is a part, a "transaction" under that contract, or a "refusal to perform" any part of the underlying contract. 9 U.S.C. § 2.[2] Whether a cause of action sounds in contract or in tort is of no matter to determining the reach of the FAA policy. What matters— for FAA purposes—is that the dispute to be arbitrated stems from the formation or interpretation of the contract, the business

---

Consent to such a waiver, though, "must be manifested by affirmative action such as a specific waiver in writing or by announcement in open court." *Curbelo v. Ullman*, 571 So. 2d 443, 444 (Fla. 1990) (internal quotation omitted).

[2] The FAA also applies to agreements to arbitrate already-existing controversies "arising out of such a contract, transaction, or refusal[.]" 9 U.S.C. § 2. We do not have a separate, post hoc arbitration agreement like that here.

exchange contemplated by that contract, or the performance or nonperformance under the contract's terms. Any other dispute covered by the terms of an arbitration provision would not be subject to federal arbitration policy, including its requirement that courts construe ambiguities in favor of arbitration (and against the constitutional rights to court access and a jury trial) when dealing with a broad arbitration provision purporting to cover tort suits unmoored to the contract, the underlying transaction, and the parties' performance of the contract terms.

B

Allow me now to turn to both the arbitration agreement in the U-Haul rental contract and Meyer's tort suit. Even though the last sentence of the definition for "claim" mentions "statutory and tort claims"—on which the trial court focused—the term remains limited by one or both of two participial phrases: "relating in any way *to your rental or purchase* from U-Haul," and "arising out of or relating to, *Your dealings* with U-Haul." (emphases supplied). The first refers to the "transaction" just mentioned in the preceding subpart, the second to the contract and performance thereunder. It is clear, then, that the intent here was to make the reach of this arbitration agreement commensurate with that of the FAA's policy, as described above—covering contract and tort claims stemming from the formation and interpretation of the rental agreement, from the rental of the storage unit, and from performance under the agreement.[3] Because any claim is limited by the terms just discussed, the mention of "tort" in the definition of "claim" should not be read to extend arbitrability any further than the FAA protections.

Looking at Meyer's complaint, the tort suit has nothing to do with any of these. The complaint instead purports to state run-of-the-mine slip-and-fall causes of action, asserting that Meyer entered a U-Haul facility open to the general public and slipped on construction dust that U-Haul should have known about and cleaned up, relying on only a general, common-law duty of care

_____

[3] This conclusion finds support in the arbitration agreement's proviso that it is to "be construed and interpreted under the [FAA]."

8

owed by U-Haul to any member of the public visiting one of its facilities, not just a renter of one of its storage units. The complaint makes no mention of any special duty or obligation arising out of the rental agreement.

It is that missing connection between the tort suit and the U-Haul rental agreement that militates in favor of vacating the trial court's order. Our supreme court tells us that "even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause," stating a principle that comports with the federal policy described in the preceding subpart. *Seifert*, 750 So. 2d at 638; *cf. Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001) ("Disputes that are not related—*with at least some directness*—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause." (emphasis supplied)). Seeing that the U-Haul arbitration agreement included "torts," the trial court seemingly assumed from there that "the mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties" was sufficient "by itself to transform a dispute into one 'arising out of or relating to' the agreement," but the supreme court says otherwise. *See Seifert*, 750 So. 2d at 638 (explaining, to the contrary, that this is "insufficient," that "the mere coincidence that the parties in dispute have a contractual relationship will ordinarily not be enough to mandate arbitration of the dispute"). Simply put, inclusion of the word "tort" in an arbitration agreement does not create a nexus between it and a tort suit between the parties.

Rather, to say a tort claim arises out of or relates to a contract, or even to the parties' dealings or their performance regarding the contract, the claim "must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Id.* Of course, the reference cannot be just some passing reference, not a mere mention as background for why the plaintiff happened to be at the location where the accident happened. The minimum reference must be substantive,

as a *source* of the duty that was breached or of a special relationship giving rise to an obligation not owed to the public at large. *See id.* at 638–39 (discussing approvingly *Hersman, Inc. v. Fleming Cos., Inc.,* 19 F.Supp.2d 1282, 1287 (M.D.Ala.1998), *aff'd,* 180 F.3d 271 (11th Cir.1999), which set out this required "relationship between the claims asserted and the underlying contractual obligations"); *see also id.* at 640 (requiring a tort claim, for it to be arbitrable under a contract, to stem from the breach of a "new dut[y]" created by the parties' "unique relationship" under their contract, rather than breach of a duty generally "imposed by law . . . owed to others besides the contracting parties" (internal quotation and citation omitted)); *id.* (agreeing that a suit "predicated upon a tort theory of common law negligence unrelated to the rights and obligations of the [underlying] contract was not contemplated by the parties when the contract was made and should not be subject to arbitration"); *Jackson v. Shakespeare Found., Inc.,* 108 So. 3d 587, 593 (Fla. 2013) (explaining that even under an expansive arbitration agreement "a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public" (citing *Seifert,* 750 So. 2d. at 639)).

The supreme court's later decision in *Laizure v. Avante at Leesburg, Inc.,* 109 So. 3d 752 (Fla. 2013) does not require a different result. In that case, the court considered the breadth of arbitration agreement's reach: to "any claim based on . . . breach of contract, breach of fiduciary duty, fraud or misrepresentation, common law or statutory negligence, gross negligence, malpractice or a claim based on any departure from accepted standards of medical or nursing care"; distinguishing this text from that in *Seifert,* concluding that "the terms of the arbitration agreement in [*Laizure*] specifically 'contemplated the existence and arbitration of future tort claims for personal injuries based on a party's common law negligence.'" *Laizure v. Avante at Leesburg, Inc.,* 109 So. 3d 752, 758 (Fla. 2013) (quoting *Seifert,* 750 So. 2d at 642). These mentions of "common law" and "statutory negligence," among other theories, mattered in *Laizure,* however, only because the underlying suit stemmed from the services provided under the

parties' contract, the breached duties arising from a special relationship existing between the parties.[4]

---

[4] The arbitration agreement was part of the parties' admission agreement, requiring arbitration of a claim arising out of or relating to the agreement or connected to the resident's stay at the nursing home. *Id.* at 755. The suit was filed on behalf of a deceased nursing-home resident, asserting "against each of the defendants a claim for deprivation or infringement of [his] statutory nursing home residents' rights pursuant to the Florida Nursing Home Residents' Rights Act (NHRRA), embodied in chapter 400, Florida Statutes (2008)." *Id.* An alternative wrongful death claim was asserted based on the nursing home's "alleged negligence, specifically the failure 'to render care, treatment and services in a reasonably prudent manner and in accordance with accepted standards of care and practice in the nursing home facilities industry.'" *Laizure v. Avante at Leesburg, Inc.*, 44 So. 3d 1254, 1258 (Fla. 5th DCA 2010), *approved,* 109 So. 3d 752 (Fla. 2013). In the light of these facts, the conclusion that the tort claims fell under the arbitration agreement is quite unremarkable.

The suit in *Laizure* was based on the decedent's status as an admitted "resident" of the nursing-home defendant at the time, challenging the level of care (read: performance) and services provided under the parties' contract. Indeed, chapter 400, Florida Statutes, lists "rights and responsibilities of the residents" of a nursing home, including a "right to receive adequate and appropriate health care and protective and support services," which the facility had to honor. § 400.022, Fla. Stat. The chapter also establishes an "exclusive cause of action for negligence or a violation of residents' rights as specified under this part which alleges direct or vicarious liability for the personal injury or death of a nursing home resident arising from such negligence or violation of rights," one that seeks "damages for such injury or death" against the facility. § 400.023(1), Fla. Stat. The suit in *Laizure* depended on the relationship created and the duties owed because of the parties' underlying contract, differentiating the decedent's status from that of a member of the public.

By contrast there is no such special relationship underlying Meyer's suit. His

> allegations rely on obligations that would extend to anyone, third parties as well as [him], who might be injured by [U-Haul's purported] tortious conduct. Indeed, it appears [from the complaint's allegations] to be entirely fortuitous that it was [Meyer], and not [another member of the public visiting the facility], who was injured as a result of the alleged neglect by [U-Haul].

*See Seifert*, 750 So. 2d at 641. Like the decedent-plaintiff in *Seifert*, it is highly unlikely that Meyer would have been at the U-Haul location "but for" the storage-unit contract. But that is all we have here—the "existence of such contract," which by itself is not enough to support compelling arbitration of Meyer's suit, a suit bearing no "significant relationship to the contract," one not asserting a duty or obligation of U-Haul arising from or governed by it. *Id.* at 642. Federal policy does not require arbitration here, and we should not "stretch" an interpretation of the U-Haul arbitration agreement to "waive [Meyer's constitutional rights" or allow it to "be used as a shield to block [Meyer's] access to a judicial forum" for his slip-and-fall suit. *See id.* (internal quotation and citation omitted).

\* \* \*

Meyer cannot be compelled to arbitrate his personal injury suit against U-Haul. The requisite nexus between the storage-unit rental contract and the complaint's slip-and-fall allegations is lacking. In turn, the trial court's order compelling arbitration of Meyer's claim was rendered in error, necessitating a vacatur rather than the affirmance given by the majority.

———————————————

Donald E. Pinaud of All Florida Justice, LLC, Jacksonville, for Appellant.

Thomas A. Valdez, Stevie E. Baker, and Vilma Martinez of Quintairos, Prieto, Wood & Boyer, P.A., Tampa and Orlando, for Appellees.