PERRY, J.
Juan Mendez, Jr, (the “son”), as personal representative of the estate of Juan Mendez, Sr. (the “father”), seeks review of the decision of the Third District Court of Appeal in Mendez v. Hampton Court Nursing Center, LLC, 140 So.3d 671 (Fla. 3d DCA 2014), on the ground that it expressly and directly conflicts with decisions of the district courts of appeal on whether a nursing home resident is bound by an arbitration clause in a nursing home contract, when the resident neither signed nor otherwise agreed to. the contract. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
This case concerns whether the father is bound by an arbitration clause in a nursing home contract signed by Hampton Court and the son, but not the father. The Third District found “that the father is bound by the arbitration provision contained in the agreement for care executed by his son, and to which the father was the intended third-party beneficiary.” Mendez, 140 So.3d at 676. We .disagree. Accordingly, we quash the Third District’s decision and remand for further proceedings consistent with this opinion..
I. Facts and Procedure
Hampton Court Nursing Center (“Hampton Court”) admitted the father to its nursing home facility in 2009. At that time, the son signed a nursing home contract with Hampton Court, providing for the father’s residency and care at Hampton Court. The contract included an arbitration clause. The father did hot sign the contract.
While under Hampton Court’s care in 2011, the father developed an eye infection that eventually required the removal of his left eye. In 2012, the son filed suit on the father’s behalf in the Circuit Court for the Eleventh Judicial Circuit, Miami-Dade County, alleging negligence and statutory *148 violations. Hampton Court moved to compel arbitration and stay the judicial proceedings. The circuit court heard argument and granted the motion. The father appealed, but passed away while the appeal was pending. See id. at 673.
On appeal from the trial court’s order, the Third District affirmed. Id. at 676. Citing Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham, 953 So.2d 574 (Fla. 1st DCA 2007), the Third District held that the father was the intended third-party beneficiary of the nursing home contract, and accordingly, Hampton Court could bind him to its contract even though he never signed it. Mendez, 140 So.3d at 674.
II. The Conflict Cases
“Third persons who are not parties to an arbitration agreement generally are not bound by the agreement.” 21 Williston on Contracts § 57:19, at 181 (4th ed.2001). Notwithstanding that principle, the district courts disagree on whether a nursing home resident is bound by an arbitration clause in a nursing home contract, when the resident neither signed nor otherwise agreed to the contract.
The First and Third Districts held that the resident is bound by the contract, because the resident is the intended third-party beneficiary of the contract. See Mendez, 140 So.3d at 674; Alterra Healthcare, 953 So.2d at 579. Both courts emphasized that the resident is bound irrespective of whether the resident signed the contract, or whether the signing party had authority to act on the resident’s behalf. See Mendez, 140 So.3d at 674; Alterra Healthcare, 953 So.2d at 579. As discussed below, we reject this view.
On similar facts, the Second, Fourth, and Fifth Districts held differently. See Perry ex rel. Perry v. Sovereign Healthcare Metro W., LLC, 100 So.3d 146, 147-48 (Fla. 5th DCA 2012); Fletcher v. Huntington Place Ltd. P’ship, 952 So.2d 1225, 1227 (Fla. 5th DCA 2007); Lepisto v. Senior Lifestyle Newport Ltd. P’ship, 78 So.3d 89, 92 (Fla. 4th DCA 2012); In re Estate of McKibhin, 977 So.2d 612, 613 (Fla. 2d DCA 2008). These decisions analyzed the facts using an agency law framework and held that a resident was not bound by a contract that he or she did not sign, where the signing party did not agree to the contract on the resident’s behalf or lacked the authority to act for the resident. See Perry, 100 So.3d at 147-48; Fletcher, 952 So.2d at 1227; Lepisto, 78 So.3d at 92; McKibhin, 977 So.2d at 613. The Fifth District explicitly considered and rejected the type of third-party beneficiary argument upheld in Mendez and Alterra Healthcare. See Perry, 100 So.3d at 147-48.
III. The Third-Party Beneficiary Doctrine
Hampton Court urges us to adopt the rule of Mendez and Alterra Healthcare: that under the third-party beneficiary doctrine, a nursing home resident may be bound by a contract to which the resident never agrees. We disagree.
The doctrine of third-party beneficiaries provides that under certain circumstances, a person may sue to enforce a contract, even though the person is not a party to the contract. See 11 Fla. Jur.2d Contracts § 206, at 406-07 (2008). “To establish an action for breach of a third party beneficiary contract, [the third-party beneficiary] must allege and prove the following four elements: ‘(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach.’” Found. Health v. Westside EKG Assocs., *149 944 So.2d 188, 194-95 (Fla.2006) (quoting Networkip, LLC v. Spread Enters., Inc., 922 So.2d 355, 858 (Fla. 3d DCA 2006)); see also Patrick John McGinley, 21 Fla. Prac., Elements of an Action § 603:1 (2015-2016 ed.).
Critically, the third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party — not the other way around. See, e.g., Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner, 612 So.2d 1378, 1380 (Fla.1993); Shingleton v. Bussey, 223 So.2d 713, 715 (Fla.1969). The third-party beneficiary doctrine does not permit two parties to bind a third — without the third party’s agreement — merely by conferring a benefit on the third party. Mendez and Alterra Healthcare are not in accord with this principle.
We have previously held that “[w]e see no reason to allow [the non-contracting third-party beneficiary] to enjoy -the benefits of the [contract] without bearing its burdens as well.” Nat'l Gypsum Co. v. Travelers Indem. Co., 417 So.2d 254, 256 (Fla.1982) (holding that the non-contracting third-party beneficiary had to comply with the contract’s pre-litigation notice requirements if the third party wanted to sue to enforce the contract). We distinguish National Gypsum, however, because the third-party beneficiary in that case sued to enforce a contract between other parties; here, the father’s estate sued for negligence and statutory violations — not to enforce the son’s contract with Hampton Court.
This distinction is consistent with many of the authorities cited in Justice Polston’s dissenting opinion. For instance, the dissent observes that “Florida courts have required third-party beneficiaries to arbitrate,” Polston, J., dissenting op. at 154 (quoting Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1302 (11th Cir.2014)); that “[o]rdinarily, a third party beneficiary is bound by an arbitration clause in the contract under which the party claims third party beneficiary status,” Polston, J., dissenting op. at 154 (quoting 8 Fla. Prac., Constr. Law Manual § 7:38 (2015-2016 ed.)); and that “traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through ... third-party beneficiary theories,’” Polston, J., dissenting op. at 154 (quoting Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (emphasis removed)). We agree that when a plaintiff sues under a contract to which the plaintiff is not a party — unlike the father in this case — we will ordinarily enforce an arbitration clause contained in that contract, absent some other valid defense. Cf. Nat’l Gypsum, 417 So.2d at 256. However, the rule of National Gypsum, does not apply here because the father does not bring suit as a third-party beneficiary for the benefit of a contract signed by others. The circumstances presented in National Gypsum are not presented here. Neither Justice Polston’s dissenting opinion, Mendez, nor Alterra Healthcare makes this distinction, and none finds support from National Gypsum.
Mendez and Alterra Healthcare also run contrary to the purpose behind the third-party beneficiary doctrine, which is to do justice for the non-contracting third-party beneficiary. From the early days of the third-party beneficiary principle, its proponents recognized that the third-party beneficiary rule was grounded in principles of justice and equity. See, e.g., Arthur L. Corbin, Law of Third Party Beneficiaries in Pennsylvania, 77 U. Penn. L.Rev. 1, 6 (1928); Samuel Williston, Contracts for the Benefit of a Third Person, 15 Harv. L.Rev. 767, 772-73 (1902). The seminal case establishing the third-party beneficiary doc *150 trine argued that “manifest justice” required the establishment of the third-party beneficiary doctrine, even if traditional contract principles demanded a different result. Lawrence v. Fox, 20 N.Y. 268, 275 (1859) (plurality opinion).
Justice Polston’s dissent disapproves of these authorities, criticizing them as old. See Polston, J., dissenting op. at 152-53, 154. Lawrence is now “universally recognized as the landmark case in the evolution of the contract law of third party beneficiaries in the United States.” 9 Corbin on Contracts § 42.3, at 16 (rev. ed.2007). Professor Williston’s writings are instructive “because almost immediately after Lawrence v. Fox was decided, contract' law became dominated by the doctrinal reasoning of the classical contract school, as exemplified ... in the commentaries of figures like ... Williston,” Melvin A. Eisenberg, Third-Party Beneficiaries, 92 Colum. L.Rev. 1358, 1365 (1992). Professor Corbin’s thoughts are especially noteworthy because he “had more influence on the sustained development of [the third-party beneficiary] rule than anyone else before him or since.” Anthony Jon Waters, The Property in the Promise: A Study of the Third Party Beneficiary Rule, 98 Harv. L.Rev. 1109, 1172 (1985). If Lawrence and Professors Corbin’s and Williston’s writings are invalid merely because of their age, then so is Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).
Neither Mendez nor Alterra Healthcare squares with the principles of justice and equity underlying the third-party beneficiary doctrine: both decisions permit contracting parties to. bind the non-contracting party without the non-contracting party’s consent. See Mendez, 140 So.3d at 674-76; Alterra Healthcare, 953 So.2d at 579. We would never enforce an admission agreement if a nursing home obtained a resident’s signature by threatening the violent destruction of the resident’s property unless the resident signed the agreement. Cf. Casto v. Casto, 508 So.2d 330, 335 (Fla.1987) (invalidating a prenuptial agreement in part because of the husband’s ultimatum that the wife “sign the agreement or he would blow up the house and throw Clorox all over her clothes”). If we will not enforce a contract when a party agrees under threat or duress, then we should not enforce a contract in the absence of the party’s agreement altogether.
IV. Agency Law and Medical Incapacity
Justice Polston’s dissent also attempts to distinguish this case on other grounds, claiming that the son signed the admissions contract as a representative of his father. Polston, J., dissenting op. at 154. The record in this case does not support this analysis.
First, we cannot conclude that the son was the father’s representative. When “the totality of the evidence is susceptible to multiple inferences and interpretations, the existence and scope of an agency relationship are generally questions of fact.” Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 853 (Fla.2003); see also Goldschmidt v. Holman, 571 So.2d 422, 424 (Fla.1990) (“[T]he existence of an agency relationship is normally one for the trier of fact to determine, [except where] there [is] no evidentiary question ... for the [factfinder] to resolve.” (citation omitted)). In this case, the record contains conflicting evidence on the question of agency. On one hand, the nursing home contract contains the son’s signature on a line labeled “Resident’s Representative.” On the other hand, the record also contains the son’s affidavit attesting to the fact that the father had not granted the son any written authorization to act as the *151 father’s agent, nor had the father “otherwise directed, appointed, or instructed [the son] in any way on or prior to [the date of the father’s admission to Hampton Court] to carry out [the father’s] affairs for him relating to any matter.” We need not remand to the trial court to hold an evi-dentiary hearing and determine whether the son was the father’s representative, however, because Hampton Court expressly disclaims any reliance on agency principles. See Hampton Court’s Answer Br. 5 (stating that “an argument ... based on principles of Agency Law [sic] ... has no relevance'in cases like this one”); id. at 14 (noting that Hampton Court has “made no argument based on agency law principles”); Oral Arg. at 33:39 (Q: “So are you saying [that the son was] the father’s agent?” A: “No, Your Honor. No.”).
Finally, we hold that the father’s mental capacity does not impact the outcome of this case. Hampton Court explicitly concedes that a nursing home resident’s “mental capacity or competence is irrelevant to the question of whether an individual can be bound to the terms of a contráct as a third party beneficiary.” Hampton Court’s Answer Br. 13-14; id. at' 18 (observing that a nursing home resident’s “capacity to give informed consent or make medical decisions ... is irrelevant in a third party beneficiary analysis”); id. at 30 (“[The father’s] mental status is irrelevant to a proper third party beneficiary analysis.”). If Hampton Court were concerned that the father lacked the required mental capacity to execute binding contracts, it could have availed itself of -the Legislature’s comprehensive statutory scheme governing incapacitated individuals. See Florida Guardianship Law,- ch. 744, Fla. Stat. (2015). Any adult person — presumably including an individual affiliated with Hampton Court — could have petitioned for a court to adjudicate the father incapacitated and appoint a guardian. See §§ 744.3201, 744.334, Fla. Stat. An appointed guardian would have held the power to contract on the father’s behalf for his residency at Hampton Court. See § 744.441(21), Fla. Stat. Hampton Court elected not to seek appointment of a guardian, and we decline to use common law contract principles to conduct an end-run around the Legislature’s comprehensive guardianship scheme.
V. Conclusion
We hold that the third-party beneficiary doctrine does not bind the father to the arbitration agreement in Hampton Court’s nursing home admission agreement, to which he never agreed. Accordingly, we quash the Third District’s decision below, and remand to that court for further proceedings not inconsistent with this opinion. We approve'the decisions in Perry, Lepis-to, McKibbin, and Fletcher, to the extent those decisions are consistent with this opinion.
It is so ordered.
LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, J., dissents with an opinion.
POLSTON, J., dissents with an opinion.