[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10188
Non-Argument Calendar
_____

D.C. Docket No. 5:17-cv-00415-JSM-PRL


CANDY RAY,

Plaintiff - Appellee,

versus

NPRTO FLORIDA, LLC,
d.b.a. Progressive Leasing,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 26, 2018)

Before WILLIAM PRYOR, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Candy Ray, whose husband signed a lease-to-own contract for a bed, filed suit alleging that Progressive Leasing violated the Telephone Consumer Protection Act, 42 U.S.C. § 227, and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, by making hundreds of calls to her cell phone number in an attempt to collect her husband's debt.  Progressive Leasing moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, pursuant to the arbitration provision in the lease agreement signed by Mr. Ray, who is not a party in this action, and to stay litigation pending the completion of arbitration.  The district court denied Progressive Leasing's motion, concluding that Mrs. Ray, as a non-signatory to the lease agreement, was not bound by its arbitration provision. Progressive Leasing appeals, and we affirm.

**I**

In September of 2015, Mr. Ray purchased a bed from Progressive Leasing through a lease-to-own program.  Mrs. Ray did not co-sign the lease agreement for the bed, but Mr. Ray provided her cell phone number as the "mobile phone number" to be associated with the account.

Mr. Ray's lease agreement with Progressive Leasing contained a provision requiring arbitration (upon election by either party) of "any claim under this arbitration provision."  The provision contained the following definitions:

> References to "we," "us" and "our" include our "Related Parties" – all our parent companies, subsidiaries and affiliates, and our and their

2

employees, directors, officers, shareholders, governors, managers and members. Our "Related Parties" also include third parties that you bring a Claim against at the same time you bring a Claim against us or any other Related Party, including, without limitation, the merchant who sold us the Property we leased you.

. . .

"Claim" means any claim, dispute or controversy between *you and us* . . . that *arises from or relates in any way to this Lease* or the Property (including any amendment, modification or extension of this Lease); … any of our marketing, advertising, solicitations and conduct *relating to this Lease*, the Property and/or a prior Lease and related property; our collection of any amounts *you owe*; or our disclosure of or failure to protect any information about you. "Claim" is to be given the broadest reasonable meaning and includes claims of every constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity. It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief.  (emphasis added)

D.E. 14-1 at 7-8.   The lease agreement allowed Mr. Ray to opt out of the arbitration provision within 30 days of signing the lease, without affecting any other provisions of the lease.  There is no evidence he opted out of the arbitration provision.

Soon after he signed the lease agreement, Mr. Ray had a billing dispute with Progressive Leasing, which resulted in a "heated exchange" between them.  In October of 2015, during a telephone conversation between Mr. Ray and a representative of Progressive Leasing, Mrs. Ray intervened and spoke to the representative in an attempt to resolve the billing dispute.  Thereafter, Progressive

3

leasing began a "relentless campaign of placing daily, repeated robocalls" to Mrs. Ray's cell phone in an attempt to collect the debt owed by Mr. Ray.

In January of 2016, Mrs. Ray says, she expressly revoked any consent Progressive Leasing may have believed it had to place robocalls to her cell phone. Progressive Leasing did not stop calling her, however, and indicated it would not stop calling her, despite the fact that she said she was not going to pay her husband's alleged debt.

In February of 2016, Mrs. Ray claims she again expressly revoked consent to receive robocalls from Progressive Leasing and informed the company that she would hire a lawyer. From March through October of 2016, Progressive Leasing placed hundreds of robocalls to her cell phone, often more than once per day, and sometimes even as often as three, four, or five times per day. Progressive Leasing called from over a dozen different phone numbers, so Mrs. Ray never knew when it was "safe" to answer her phone.

## II

We review *de novo* a district court's denial of a motion to compel arbitration. *See Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012). Whether a party has agreed to arbitrate an issue is a matter of contract law and interpretation. *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1208 (11th Cir. 2011). "[I]t is the language of the contract that defines the scope of disputes

4

subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "[N]othing in the [Federal Arbitration Act] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *Id*.

### III

On appeal, Progressive Leasing argues that, under Florida law, a non-signatory can be bound by a broad arbitration agreement (e.g., one with language such as "any controversy arising out of or related to"). *See, e.g., Armas v. Prudential Secs., Inc.*, 842 So. 2d 210, 212 (Fla. 3d DCA 2003) (citing cases). We decline to address this Florida-law based argument.

In the district court, Progressive Leasing cited only federal law in support of its argument that the broad language of the lease agreement bound Mrs. Ray. *See* D.E. 14 at 11-13. Progressive Leasing did not cite any Florida cases to the district court in its motion, and when Mrs. Ray responded to the motion and asserted that Florida law applied to this issue, *see* D.E. 20 at 3-6, 9-10, Progressive Leasing did not file a reply.

The district court based its decision in large part on *Mendez v. Hampton Court Nursing Center, LLC*, 203 So. 3d 146 (Fla. 2016), yet in its briefs on appeal, Progressive Leasing fails to mention *Mendez* even once, much less explain why the district court's reliance on it was misplaced. Also, the only post-*Mendez* Florida case Progressive Leasing cites is *Sawgrass Ford, Inc. v. Vargas*, 214 So. 3d 691,

693 (Fla. Dist. Ct. App. 2017), and only for the general proposition that public policy favors arbitration that any question about the scope of an arbitration agreement and waiver should be resolved in favor of arbitration.

Progressive Leasing has therefore abandoned challenging the primary basis on which the district court ruled.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against [it] is incorrect. When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, [the appeallant] is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").  Because Progressive Leasing essentially ignores the well-reasoned analysis of the district court's order, we affirm the decision of the district court.

## IV

Because Progressive Leasing abandoned its challenge to the principal basis on which the district court made its decision, we affirm.

**AFFIRMED.**

6