[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11215

_____

RAPHYR LUBIN,
individually and on behalf of all others
similarly situated,

                                        Plaintiff-Appellee,

*versus*

STARBUCKS CORPORATION,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-01311-CEH-TGW

_____

Before LAGOA, BRASHER, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

Ariel Torres, a former Starbucks employee, and Raphyr Lubin, the husband of another former Starbucks employee, brought a putative class action against Starbucks in federal district court. Torres and Lubin alleged that Starbucks sent them deficient health-insurance notices under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Consolidated Omnibus Budget Reconciliation Act (COBRA). *See* 29 U.S.C. § 1166(a); 29 C.F.R. § 2590.606-4. Starbucks responded by moving to compel arbitration, citing employment agreements that Torres and Lubin's wife signed with Starbucks. Torres consented to arbitration, but Lubin opposed Starbucks's motion. Although Lubin's wife signed the employment agreement, Lubin was not a party to the agreement. This appeal requires us to determine whether Lubin must arbitrate his claims in light of his wife's employment agreement.

After careful review, and with the benefit of oral argument, we affirm the district court's order denying Starbucks's motion to compel arbitration of Lubin's claim.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2020, Ariel Torres initiated a putative class action against his former employer, Starbucks, in federal district court. Torres alleged that Starbucks failed to provide him and similarly situated class members with adequate COBRA enrollment notices under 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4. In response, Starbucks moved to compel arbitration. The motion to compel

became moot, however, when Torres amended his complaint and Raphyr Lubin joined as an additional class representative. Starbucks moved to compel arbitration again. Torres consented, agreeing that his claim was covered by an arbitration clause in his employment agreement with Starbucks.[1] However, Lubin opposed the motion.

Unlike Torres, Lubin never worked for Starbucks. Instead, Lubin obtained coverage under Starbucks's Welfare Benefits Plan because his wife worked for Starbucks, and she elected to cover Lubin as her spouse. Starbucks terminated Lubin's wife in February 2019, which was a "qualifying event" that triggered Lubin's right to a COBRA notice. 29 U.S.C. §§ 1163(2), 1166(a)(4). Accordingly, Starbucks's COBRA administrator, Alight Solutions, mailed Lubin the allegedly deficient COBRA notice.

Importantly, because Lubin was never employed at Starbucks, he never signed an employment agreement or an arbitration agreement with Starbucks. Rather, Lubin's wife signed the employment agreement, which included an arbitration clause. Starbucks believes that Lubin must arbitrate in light of his wife's employment agreement, which provides:

> Starbucks and I agree to use binding individual arbitration to resolve any "Covered Claims" . . . "Covered Claims" are those brought under any statute . . . relating to my employment, including those concerning

---

[1] Torres is not a party to this appeal.

> any element of compensation . . . or termination of employment.
>
> Except as provided herein, I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Starbucks and I waive the right to a trial before a judge or jury in federal or state court.

The arbitration provision also contained a delegation clause:

> Except as provided below, Starbucks and I agree that the Arbitrator—and not a court or agency—shall have exclusive authority to resolve any dispute regarding the formation, interpretation, applicability, enforceability, or implementation of this Agreement, including any claim that all or part of this Agreement is void or voidable.

Excluded from arbitration, however, are "actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award under this Agreement."

The district court denied Starbucks's motion to compel arbitration as to Lubin. The court noted that Lubin was neither a party to his wife's employment agreement nor did he sue to enforce the employment agreement. Instead, Lubin sought to enforce his own, statutory right to an adequate COBRA notice. *See* 29 U.S.C. § 1166(a)(4); 29 C.F.R. § 2590.606-4. Accordingly, the court held that no equitable doctrine of Florida contract law—including equitable estoppel and third-party beneficiary doctrine—required Lubin to arbitrate. Finally, the district court held that

Starbucks waived its argument that Lubin must arbitrate because he sought to enforce rights that were derivative of his wife's rights. The court also noted that, in any event, Starbucks was wrong on the merits because Lubin sought to enforce his own rights under 29 U.S.C. § 1166(a)(4).

Starbucks appealed.

## II.    STANDARD OF REVIEW

We review the denial of a motion to compel arbitration de novo. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1328 (11th Cir. 2016). We also review the district court's reading of an arbitration clause de novo. *JPay, Inc. v. Kobel*, 904 F.3d 923, 928 (11th Cir. 2018).

## III.    ANALYSIS

### A.    The Arbitration Agreement

The Federal Arbitration Act, 9 U.S.C. § 1 et seq., enshrines a "'presumption of arbitrability'" such that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014) (first quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); then quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). But that "'presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Id.* at 1116 (quoting *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011)). And the threshold question of whether an arbitration agreement

6                    Opinion of the Court                    21-11215

exists at all is "simply a matter of contract." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Without an agreement to arbitrate, "a court cannot compel the parties to settle their dispute in an arbitral forum." *Bazemore*, 827 F.3d at 1329 (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)).

On appeal, Starbucks argues that the district court erred in "ignor[ing] the strong presumption in favor of arbitration." Lubin counters that he is not a party to the arbitration agreement. Also, according to Lubin, his claim has nothing to do with his wife's employment agreement; rather, it centers on his statutory right to receive an adequate COBRA notice. *See* 29 U.S.C. § 1166(a)(4); 29 C.F.R. § 2590.606-4. And because he never signed an arbitration agreement with Starbucks, he is not required to arbitrate a matter concerning his rights under federal law.

We agree with Lubin. Lubin never signed or otherwise agreed to the arbitration agreement with Starbucks. Because he was not a party to the agreement, the Court cannot compel him to adhere to the terms of the agreement. *See Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008) ("[A]rbitration is a creature of contract; a party may not be compelled to arbitrate if he did not agree to do so."). Starbucks fears that this outcome creates a loophole for its employees to stage an end run around their arbitration agreements. But Lubin's wife is not a party to this action. If she were, she would be bound by the arbitration agreement. In contrast to his wife, Lubin is a non-party to

the arbitration agreement, and he seeks to vindicates *his* rights, not his wife's.

Starbucks argues, however, that the arbitration agreement's delegation clause grants exclusive jurisdiction to an arbitrator to determine whether Lubin must arbitrate.

It is true that "parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015). But courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Kaplan*, 514 U.S. at 944 (alterations adopted) (quoting *AT & T*, 475 U.S. at 649); *accord Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014).

Starbucks argues that the delegation clause of the arbitration agreement makes clear that the parties agreed to arbitrate questions of arbitrability. The delegation clause provides that "Starbucks and I agree that the Arbitrator—and not a court or agency—shall have exclusive authority to resolve any dispute regarding the . . . applicability . . . of this Agreement." Starbucks also notes that the agreement incorporates the National Rules for the Resolution of Employment Disputes, which state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Am. Arb. Ass'n, Empl. Arb. R. and Mediation Procs. R-6(a).

Lubin responds, however, that the agreement's exclusion clause makes the application of the delegation clause neither "'clear'" nor "unmistakable." *See Kaplan*, 514 U.S. at 944 (alterations adopted) (quoting *AT & T*, 475 U.S. at 649). The agreement's exclusion clause provides that "[c]laims excluded from arbitration" include "actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award under this Agreement." In *Wilson v. Starbucks Corp.*, 385 F. Supp. 3d 557 (E.D. Ky. 2019)—a case involving an arbitration agreement identical to the agreement here—the court refused to enforce the delegation clause because "[t]he arbitration agreement expressly exclude[d] '(c) actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award under this Agreement.'" *Id.* at 561. As a result, "the arbitration agreement fail[ed] to provide clear and unmistakable evidence that" the parties agreed to arbitrate arbitrability, and the court declined to "assume" that the parties intended to do so. *Id.* (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71–72 (2019)).

We agree with Lubin. The language of the arbitration agreement is ambiguous because the delegation clause conflicts with the exclusion clause. The delegation clause provides the arbitrator with authority to resolve disputes about the applicability of the arbitration agreement. But the exclusion clause expressly states that "actions" to "enforce" the agreement or "compel arbitration" are excluded from arbitration. Because the arbitration agreement does not provide "'clear and unmistakable evidence'" that the parties agreed arbitrate the present dispute about arbitrability, we

21-11215                Opinion of the Court                9

"should not assume" that the delegation clause applies. *See Kaplan*, 514 U.S. at 944 (alterations adopted) (quoting *AT & T*, 475 U.S. at 649).

Moreover, Lubin is not a party to the delegation clause. And absent an agreement between Lubin and Starbucks, "a court cannot compel the parties to settle their dispute in an arbitral forum." *Bazemore*, 827 F.3d at 1329 (quoting *Klay*, 389 F.3d at 1200). Arbitration agreements are no more enforceable than an average contract, and we "may not devise novel rules to favor arbitration over litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). The delegation clause, just like every other clause in the arbitration agreement, was between Starbucks and Lubin's wife, not Lubin. We thus conclude that the terms of the arbitration agreement do not require Lubin to arbitrate his claim against Starbucks, absent another principle of law or equity.

Starbucks thus advances three arguments regarding why principles of Florida contract law require Lubin to submit to arbitration anyway.[2] We address each in turn, starting with equitable estoppel.

## B.    Equitable Estoppel

"[E]quitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while

---

[2] State law controls on whether an arbitration clause in a contract can be enforced against a non-signatory to that contract. *See Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354, 1355 n.1 (11th Cir. 2017); *Lawson v. Life of the S. Ins.*, 648 F.3d 1166, 1170–71 (11th Cir. 2011). The

10                    Opinion of the Court                    21-11215

simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Bahamas Sales Assoc.*, 701 F.3d at 1342. In some cases, a non-signatory plaintiff can be bound to an arbitration agreement based on equitable estoppel. *See, e.g., Allied Pros. Ins. v. Fitzpatrick*, 169 So. 3d 138, 142 (Fla. 4th Dist. Ct. App. 2015). Under the equitable estoppel doctrine, Starbucks could force Lubin to abide by his wife's employment agreement—including the arbitration clause—if it shows that Lubin "is relying on the [employment] agreement to assert [his] claims" and that "the scope of the arbitration clause covers the dispute." *Kroma Makeup EU*, 845 F.3d at 1354; *see also Fitzpatrick*, 169 So. 3d at 142 ("[E]stoppel applies here to bind the plaintiffs to arbitration . . . . [T]he plaintiffs cannot claim they are entitled to the benefit of the policy's coverage provision while simultaneously attempting to avoid the burden of the policy's arbitration provision.").

On appeal, Starbucks argues that Lubin is attempting to claim the benefits of his wife's employment agreement while simultaneously avoiding the agreement's arbitration clause. Starbucks points to *Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752 (Fla. 2013), in support of its position. *Laizure* held that non-signatory heirs were bound to arbitrate a wrongful-death-claim because the heirs' claim was derivative of the wrong committed against the

---

district court held, and the parties agree, that Florida law applies. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) ("If the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies.").

decedent, who had signed an arbitration agreement. *Id.* at 759–62. Starbucks also highlights *Gomez v. Allied Professionals Insurance Co.*, 457 F. Supp. 3d 1351 (S.D. Fla. 2020), which relied on the equitable-estoppel doctrine in holding that an arbitration agreement applied to a non-signatory plaintiff in his suit against a signatory defendant. *Id.* at 1360. Lubin responds that he is not suing Starbucks based on any agreement, including his wife's agreement with Starbucks, but, instead, that his claim arises under his independent statutory right to an adequate COBRA notice. *See* 29 U.S.C. § 1166(a)(4); 29 C.F.R. § 2590.606-4.

Once again, we agree with Lubin. Equitable estoppel does not compel Lubin to submit to arbitration because he is not suing to enforce or avoid any provision of his wife's employment agreement. Lubin is not claiming the benefits of the agreement while simultaneously attempting to avoid its burdens. *See Bahamas Sales Assoc.*, 701 F.3d at 1342. Rather, Lubin sues based on Starbucks's failure to fulfill its notice duties under COBRA. *See* 29 U.S.C. § 1166(a)(4); 29 C.F.R. § 2590.606-4. Those notice duties do not arise out of any provision of his wife's employment contract.

Further, *Laizure* and *Gomez* are inapposite. *Laizure* is distinguishable because a wrongful-death claim is "dependent on a wrong committed against the decedent," not the plaintiff. *See* 109 So. 3d at 759–60. But here, Starbucks allegedly violated a statutory duty it owed to Lubin himself, not to his wife. *See* 29 U.S.C. § 1166(a)(4) (creating the right to a COBRA notice for "any qualified beneficiary"). Moreover, *Laizure* is best understood as

addressing the derivative claim doctrine, which we discuss below, not the equitable estoppel doctrine. *Gomez*, a bad-faith insurance case, is also distinguishable because the non-signatory sought payments under an insurance policy that contained an arbitration clause. *See Gomez*, 457 F. Supp. 3d at 1360. *Gomez* emphasized that a non-signatory plaintiff could not avoid an arbitration clause contained in the very insurance policy that he sought benefits under. *Id.* Conversely, Lubin is seeking relief under a statute, 29 U.S.C. § 1166(a)(4), not under a provision contained in his wife's employment agreement.

We thus conclude that, because the employment agreement is not the source of Lubin's right or legal claim, Florida's equitable estoppel doctrine is inapplicable. *See Kroma Makeup EU*, 845 F.3d at 1354.

### C.    Third-Party Beneficiary Doctrine

Starbucks next attempts to invoke the third-party beneficiary doctrine to compel Lubin to arbitrate. But "[a]s a general rule, a plaintiff cannot be bound by an arbitration clause in a contract he did not sign even if he is a third-party beneficiary of the contract." *Jacocks v. Cap. Com. Real Est. Grp., Inc.*, 310 So. 3d 71, 73 (Fla. 4th Dist. Ct. App. 2021). "[T]he third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party—not the other way around." *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 149 (Fla. 2016) (first citing *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So.2d 1378, 1380 (Fla. 1993); and then citing *Shingleton v. Bussey*, 223 So.2d

713, 715 (Fla. 1969)). "The third-party beneficiary doctrine does not permit two parties to bind a third—without the third party's agreement—merely by conferring a benefit on the third party." *Id.*

Thus, under Florida law, the third-party beneficiary exception to the general rule against binding a non-party arises when "a third-party beneficiary sues to enforce a contract between other parties." *Jacocks*, 310 So. 3d at 73. In that case, the third-party beneficiary "will usually be bound by an arbitration clause contained in that contract." *Id.*; *see Nat'l Gypsum Co. v. Travelers Indem. Co.*, 417 So.2d 254, 256 (Fla.1982). But that exception is limited and "does not apply when a third-party beneficiary brings a claim other than to enforce the contract." *Jacocks*, 310 So. 3d at 73; *see Mendez*, 203 So. 3d at 149.

*Mendez* and *Jacocks* therefore foreclose Starbucks's argument that Lubin is bound by the arbitration clause as a third-party beneficiary. Lubin's wife and Starbucks cannot bind Lubin to arbitrate merely by conferring spousal health coverage on him. And Lubin is not suing to enforce a contractual duty owed by Starbucks under its employment contract with his wife. Instead, he sues under federal law, alleging that Starbucks violated statutory duties that it owed him under COBRA. *See* 29 U.S.C. § 1166(a); 29 C.F.R. § 2590.606-4. Thus, we conclude that the third-party beneficiary doctrine does not require Lubin to arbitrate his claim.

## D.    Derivative Claim

Finally, Starbucks argues that Lubin must arbitrate because his claim is "derivative" of his wife's claim. In some cases, Florida

law requires a non-signatory plaintiff to arbitrate when the underlying action is "derivative" of a wrong committed against a signatory to an arbitration provision. *See, e.g.*, *Laizure*, 109 So. 3d at 762. "Derivative claims" are claims where the plaintiff's right to recover is predicated on another party's right to recover. *Id.* at 760. For example, a wrongful-death claim flows from a tortious act committed against the decedent. *Id.* at 760–61. By virtue of the decedent's death, that claim transforms from the decedent's personal-injury claim to the heir's wrongful-death claim. *See id.*

The district court rejected Starbucks's "derivative" argument because Starbucks raised it for the first time in a supplemental brief. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1364 (11th Cir. 2006) (holding that a defendant waived its personal-jurisdiction argument by raising it for the first time in a reply brief). The district court also noted that, in any event, it would have rejected Starbucks's argument on the merits. The court explained that Lubin's claim is not "derivative" because "he seeks only to enforce his *own* statutory rights under 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4." (Emphasis added).

On appeal, Starbucks argues that the district court erred for a few reasons. First, Starbucks claims that it did not waive its derivative argument because that argument is subsumed under the third-party beneficiary argument and the equitable estoppel argument. Starbucks notes that it discussed the derivative nature of Lubin's claims in its original motion to compel, and Starbucks stresses that it continued to argue the derivative theory in oral argument

before the district court.  Next, Starbucks cites *Eckel v. Equitable Life Assurance Society of the U.S.*, 1 F. Supp. 2d 687 (E.D. Mich. 1998), for support.  There, under similar facts, a district court held that a plaintiff was required to arbitrate her COBRA claim in light of her husband's arbitration agreement with his employer.  *Id.* at 687 n.1.  In a footnote, the court explained that the wife "was listed as a dependent under her husband['s] . . . insurance policy," and therefore, "her claims are derivative of her husband's and also subject to arbitration."  *Id.*  Finally, for the first time on appeal, Starbucks cites *Wright v. Hanna Steel Corp.*, 270 F.3d 1336 (11th Cir. 2001), which held that when a court awards damages under 29 U.S.C. § 1132(c)(1) for a § 1166(a)(4) violation, the court cannot separately award damages to a health-plan beneficiary if the court already awarded damages to the health-plan participant.  *Id.* at 1343–44.  Therefore, Starbucks reasons, Lubin (a health-plan beneficiary) seeks to enforce statutory rights that are not his own, but rather, derive from his wife (a health-plan participant).

Assuming, without deciding, that Starbucks preserved its arguments about the "derivative" theory, Starbucks is incorrect on the merits.  Lubin's claim is not derivative of his wife's claim.  Lubin's claim is premised on an independent statutory right under 29 U.S.C. § 1166(a)(4).  And the mere fact that Lubin was a beneficiary of his wife's health plan does not mean that he sues to enforce his wife's rights under her employment agreement rather than his own rights, as a "qualified beneficiary," under § 1166(a)(4).  *Cf. Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 638 (Fla. 1999) ("[T]he mere fact that the dispute would not have arisen but for the existence of the

contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement. . . . [F]or a tort claim to be considered 'arising out of or relating to' an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself."); *Jacocks*, 310 So. 3d at 73 ("Jacocks is suing the defendants for negligence, not to enforce the retainer agreement. The fact that Jacocks relies on his status as an intended third-party beneficiary of the retainer agreement to establish that the defendants owed him a duty of care does not transform the basic nature of his claim from negligence to breach of contract.").

Starbucks's citation to *Eckel* does little to support its position. *Eckel* is a non-binding district court decision. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022) ("[A] district court's decisions do not bind other district courts, other judges on the same court, or even the same judge in another case."). *Eckel* also has limited persuasive value because the court did not apply Florida law and the extent of its analysis about the "derivative" nature of the non-signatory's claim is limited to two lines in a footnote. *See Eckel*, 1 F. Supp. 2d at 687 n.1.

Finally, we need not consider Starbucks's statutory-damages argument under *Wright*. *See* 270 F.3d at 1343–44. Starbucks never raised an argument based on *Wright* in the district court. Nor did it rely on *Wright*'s reasoning about the text of 29 U.S.C.

§ 1132(c)(1). Thus, this argument is waived. *See McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020) ("Generally, arguments are considered 'waived' when they are not raised in the district court.").[3]

## IV.    CONCLUSION

The district court correctly denied Starbucks's motion to compel arbitration of Lubin's claim. Because Lubin was not a party to the arbitration agreement, he cannot be compelled to arbitrate absent another principle of law or equity. No such principle applies here.

**AFFIRMED.**

---

[3] Furthermore, even if Starbucks had preserved its argument, we doubt that *Wright* necessarily implies that a beneficiary's right to a COBRA notice under § 1166(a)(4) is derivative of a participant's right to a COBRA notice. True, under *Wright*'s reading of § 1132(c)(1), a beneficiary cannot separately collect statutory damages for an inadequate notice if the participant collects statutory damages for the same violation. *See* 270 F.3d at 1343–44. But a beneficiary's ability to collect damages is distinct from whether a beneficiary has a statutory right to a COBRA notice. *Compare* 29 U.S.C. § 1132(c)(1), *with id.* § 1166(a)(4). Furthermore, § 1132(a)(1)(A) still grants a beneficiary the right to bring his own civil action—as Lubin does here—for an inadequate COBRA notice under § 1166(a)(4). In short, although § 1132(c)(1) sometimes limits a beneficiary's ability to separately collect damages for a violation of § 1166(a)(4), that does not mean that a beneficiary's right to a notice derives solely from a participant's right to a notice.

1                    Tjoflat, J., Concurring                    21-11215

TJOFLAT, Circuit Judge, concurring:

I agree with the Court's disposition of this case on the basis that Lubin was not a party to his wife's arbitration agreement and that his claim arises under federal statute, so Starbucks's contract-law arguments are inapplicable. But I write separately because I find it unnecessary to engage any further with principles of federal and state law that do not control this case.

This is a statutory case: Lubin sues to enforce a federal statutory right, the right to an adequate COBRA notice. *See* 29 U.S.C. § 1166(a); 29 C.F.R. § 2590.606-4. His claim is not the product of any bargained-for exchange with Starbucks. That is why Starbucks cannot compel him to arbitrate under an agreement that is not his own. I would not speculate on how the law would apply under different circumstances.

The Court's holding should be read narrowly to apply only where a party to an arbitration agreement seeks to compel a non-party to arbitrate, and only where the non-party's claim arises directly under federal law, as here. Any discussion in the Court's opinion that could be read more broadly is unnecessary to the resolution of this dispute. Therefore, it is either dictum, which carries no precedential value, or an alternative holding, which I do not join. *See, e.g., United States v. Files*, 63 F.4th 920, 931–35 (11th Cir. 2023) (Newsom, J., concurring) (critiquing appellate courts' practice of issuing alternative holdings).

For instance, I do not join the Court's discussion of the arbitration agreement's delegation clause. *See* Maj. Op. at 7–9. The

21-11215                Tjoflat, J., Concurring                2

Court provides a well-reasoned explanation for why that clause does not apply in the first place: Lubin is not a party to the agreement. *See* Maj. Op. at 7, 9–10. I see no reason for us then to decide whether the agreement would require *parties* to arbitrate arbitrability. That question, which implicates *all* of Starbucks's similar agreements, can and should be answered when it is more properly before a future court.

Similarly, I do not join the Court's discussion of the third-party beneficiary doctrine. *See* Maj. Op. at 13–14. Once again, the Court provides an excellent explanation for why the doctrine does not apply: Lubin sues to enforce his statutory rights, not to obtain the benefits of a contract. *See* Maj. Op. at 14. Therefore, it is unnecessary to wade further into the waters of Florida common law, where we might find broad propositions that do not apply neatly to this dispute. Should the appropriate time come, we may even find it prudent to certify a question to the Florida Supreme Court. *See, e.g.*, *Peoples Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1340 (11th Cir. 2019) (certifying a question because it was "the most prudent course of action in deciding a potentially novel application of Florida state law").

In summary, I concur in the Court's judgment and with much of its well-reasoned opinion. But it suffices to hold that Lubin cannot be bound by an arbitration agreement he did not sign, particularly when he sues to enforce a statutory right rather than a benefit of the contract. I would leave other questions for a later, more appropriate dispute.